UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT B. STANG,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**CHARLES HACK,** *et al.*,<br><br>      **Defendants.** | Civ. No. 2:13-cv-05085 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Plaintiff Robert Stang brings this breach of contract action against Defendants Charles Hack and his company PF Willingboro LLC ("PFW") (collectively "Defendants"). Plaintiff and Defendants are joint owners of a real estate company. Plaintiff alleges that Defendants breached a contract between the parties to sell Defendants' membership interest in that company to Plaintiff. Plaintiff has now moved for partial summary judgment as to his breach of contract claim, and seeks specific performance. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion is **DENIED**.

    **I.    BACKGROUND**

    The following facts are undisputed unless otherwise noted, and are drawn from Plaintiff's First Amended Complaint ("FAC") and documents submitted in connection with the pending motion for partial summary judgment.

    In 1998, Plaintiff Stang established ReNewal Willingboro LLC ("RW LLC" or "the Company"). FAC Ex. A. The Company owns commercial property in Burlington County, New Jersey. Pl. SOMF ¶ 2. Stang subsequently purchased all of the membership interests in the Company, and was the sole owner of the Company until 2012. FAC Ex A.

        **A. The AROA**

    In May 2012, Defendant Hack, a New York real estate developer and Stang's friend, agreed to acquire 49.9% of Stang's membership interest in the Company for

$174,667.38.  FAC Ex. K.  In August 2012, Stang and Hack signed an Amended and Restated Operated Agreement (the "AROA"), deemed effective as of April 2012.  FAC, Ex. A.  The relevant portions of the AROA are as follows.

Stang and PFW are the Company's two "Members."[1]  Section 1.6 provides that the AROA "may from time to time be amended."  Section 3.1 states that each Member has contributed cash or property to the Company and shall receive its Proportionate share for that contribution.  No Member shall be entitled to be repaid any part of this capital contribution.  Under Section 3.4, Members may loan the Company additional funds with an interest rate of the lesser of 6% or the maximum amount permitted by law.

Section 3.3 stipulates that "PFW shall make additional capital contributions to the Company in such amounts as may be necessary to fund the Company's [obligations . . . .] (the 'PFW Additional Contributions')".  Section 4.3(b) instructs that:

> Commencing April 1, 2013, the Company shall make monthly distributions to PFW in an amount equal to the monthly payment necessary to amortize over the sixty month period ending May 1, 2018 the amount of the PFW Additional Contributions plus a return of six percent (6%) per annum on such PFW Additional Contributions . . . .  Until the PFW Additional Contributions (and additional return of six percent (6%) per annum) are paid in full pursuant to this section 4.3(b), Hack shall be entitled to cause payment to be made to PFW in accordance with this Agreement without further authorization or approval by the Managers.

Lastly, Section 8.1 of the AROA provides PFW and Stang an equal opportunity to buy out the other's "membership interest," and sets forth the procedure to be followed.  First, the Offering Member must give the Non-Offering Member written notice of his offer to purchase the interest.  The written notice must specify the purchase price.  Then, the Non-Offering Member must either accept the offer or make a mandatory counteroffer which is at least $100,000 greater than the Offering Member's initial offer.  Each offer must be accompanied with a check in the amount of 10% of the proposed purchase price.  If an offer is rejected, the check must be returned to the Offering Member.  A failure to return the check at the time the offer is rejected shall be deemed an acceptance of the offer.  The closing "shall take place one hundred twenty (120) days after an offer is accepted or deemed accepted at 10:00 a.m. at the Company's principal office."  *Id.* § 8.1.

### B. The Parties' Other Dealings

According to Defendants, between June 2012 and January 2013, Hack, through PFW, "advanced" the Business $1.15 million under Section 4.3(b) of the AROA.  Hack

---

[1] Stang's wife, Merilee Cameron, is also a Member and owns 1% of the membership interests in the Company; however, to avoid confusion, for purposes of this Opinion, the Court will treat Cameron's stake in the Company as part of Stang's stake.

Cert. ¶ 33. Plaintiff contends that the $1.15 million were "PFW Additional Contributions" under Section 3.3 of the AROA. Pl. Reply at 5-6.

Meanwhile, on August 31, 2012, the parties entered into a Modification Agreement with Flushing Savings Bank ("FSB") to refinance the Company's mortgage at a preferred interest rate. Stang Cert. Ex H. The Modification Agreement expressly prohibits Hack or Stang from transferring his respective membership interest in the Company without FSB's "written consent." *Id*., § 11; *see also* Stang Cert. ¶ 26 ("[A] material term of the FSB loan was that any sale or transfer of membership interests in [the Company] had to be approved by FSB."). The Modification Agreement also required both Stang and Hack to sign limited personal guarantees of the debt.

### C. The Membership Interest Contract

On May 1, 2013, Stang offered to purchase PFW's membership interest for $200,000 (the "membership interest contract"). FAC Ex. B. Pursuant to Section 8.1 of the AROA, Stang included a cashier's check for $20,000. *Id*. By letter dated May 9, 2013, Hack, on behalf of PFW, accepted the offer, stating "[we] hereby accept your offer [to purchase the membership interest]." FAC Ex. C. Hack confirmed that the closing date would at the Company's main office, no later than 120 days from the date of his letter, but that he was prepared to close sooner. *Id*. On July 22, 2013, Stang proposed that the closing date be set for July 31, 2013. FAC Ex. D.

On July 23, 2013, Hack, through counsel, sent a letter stating that PFW is prepared to close on the membership interest on September 1, 2013. FAC Ex. E. Hack further stated that, "[i]n connection with the Closing, the following must be provided and/or addressed," and lists, *inter alia*: (1) a "satisfactory arrangement for repayment to PFW of the [$1.15 million] that has been advanced to the Company by PFW and/or Charles Hack," noting that, "at a minimum, the monthly unpaid payments that were to begin on April 1, 2013 [pursuant to Section 4.3(b) of the AROA]" must be paid at the closing; and (2) a release or indemnification of Hack's personal guarantees to FSB. *Id*.

The next day, Stang, through counsel, responded that Hack's proposal "has no basis in the [AROA]" and renewed his request to close on July 31, 2013. FAC Ex. F. In a subsequent letter, Stang's counsel reiterated that Stang had "no interest in renegotiating [Hack's] obligations under the [AROA]" and again demanded that Defendants close on the membership interest contract. FAC Ex. G.

On July 29, 2013, FSB sent Plaintiff a letter advising him that "[FSB] is <u>not</u> consenting to your purchase of Charles Hack's membership interest of [the Company]." Hack Cert. Exh. I (emphasis in original).

On September 6, 2013 (exactly 120 days from when Hack accepted the offer), Hack was apparently ready and willing to transfer his membership interest to Plaintiff,

but Plaintiff did not appear at the Company's office at 10 am. Hack Cert. ¶ 60. Hack has not returned the $20,000 deposit Plaintiff provided for the purchase, but Hack has continued to advance more than $150,000 to the Company. Hack Cert. ¶ 62.

### D. Proceedings in this Court

In October 2013, Plaintiff filed his FAC, alleging breach of the membership interest contract, breach of fiduciary duty and tortious interference claims against Defendants. Defendants filed counterclaims against Plaintiff, including a breach of contract claim for failure to pay back the $1.15 million pursuant to the AROA. Plaintiff now moves for partial summary judgment as to his breach of contract claim, and requests specific performance as the remedy for this claim.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

## III. DISCUSSION

Defendants contend that genuine disputes of material facts preclude summary judgment as to Plaintiff's breach of contract claim. The Court agrees.[2]

First, summary judgment in a breach of contract action "is appropriate only where the contractual language is unambiguous—*i.e.,* subject to only one reasonable

---

[2] Pursuant to the AROA's choice of law provision, New Jersey law applies to any dispute arising under the AROA. ECF doc. 256 (Stang Decl.), Ex. A (AROA) §10.1. Because this dispute arises in part under the AROA, the Court will apply New Jersey law to Plaintiff's claims.

interpretation." *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (internal citations omitted). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Id*.

Here, summary judgment is not appropriate because the parties present alternative interpretations of the membership interest contract's central term: 'membership interest.' Plaintiff contends that, if the term "membership interest" were "intended to exclude funds contributed by PFW LLC to RW LLC, [Section 8.1] would have included a carve-out for those funds." Pl. Reply at 3. In other words, under Plaintiff's reading of the sale contract, by purchasing Defendants' membership interest for $200,000, Plaintiff is released from his obligation to repay the $1.15 million that Hack infused into the Company. Plaintiff argues that the funds PFW infused were "capital contributions pursuant to Section 3.3 of the AROA," and are therefore, "among the assets of [the Company]" that Plaintiff was purchasing when he offered to buy Hack's membership interest. Pl. Reply at 5-6.

Defendants, on the other hand, maintain that the Company's obligation to repay the funds is not discharged by virtue of the membership interest sale, because repayment of the money arises under a separate contractual provision of the AROA, Section 4.3(b). A plain reading of the AROA supports Defendants' position: the additional capital contributions described in Section 3.3 are referred to as the "PFW Additional Contributions," and Section 4.3 requires the Company to make monthly payments to PFW from April 2013 through May 2018 to amortize "the amount of the PFW Additional Contributions plus a return of six percent (6%) per annum on such PFW Additional Contributions." The AROA does not contain any provision relieving the Company of this duty, even in the event of a membership interest sale. *See Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (under New Jersey law, courts "interpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties.").

Because Defendants have presented a "reasonable alternative reading of the contract," the Court holds that "a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Mylan*, 723 F.3d at 418. Moreover, the Court notes that, in light of the record evidence supporting Defendants' position, a reasonable jury could certainly find for the non-movant and interpret the contract in Defendants' favor.[3] *Anderson*, 477 U.S. at 248. Accordingly, summary judgment is not warranted.

<u>Second</u>, summary judgment is precluded because a material question of fact exists as to whether Plaintiff has substantially complied with the Modification Agreement's

---

[3] The Court further comments that neither party has provided the Court with the requisite underlying financial documents to properly determine as a matter of law whether the $1.15 million is comprised, in whole or in part, of loans, PFW Additional Capital Contributions, or Capital Contributions under Section 3.1 of the AROA.

requirement to secure FSB's written consent to the membership interest transfer, or otherwise refinance the Company's mortgage.

Under New Jersey law, to state a breach of contract claim, a Plaintiff must show: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Where a contract is subject to a condition precedent, no liability or rights can arise upon that contract if the condition precedent is not met. *See Suburban Transfer Service, Inc. v. Beech Holdings, Inc.,* 716 F.2d 220, 225 n.7 (3d Cir. 1983) ("A condition precedent is a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available.") (internal citations omitted); *First Atl. Leasing Corp. v. Tracey,* 738 F. Supp. 863, 867 (D.N.J. 1990)).

Plaintiff certifies that "a material term of the FSB loan was that any sale or transfer of membership interest in [the Company] had to be approved by FSB."[4] Stang Cert. ¶ 26. Put another way, FSB's consent was a condition precedent to any membership interest contract. *See Suburban Transfer Service, Inc.,* 716 F.2d at 225. But FSB expressly declined to consent to Plaintiff's purchase of Hack's membership interest, rendering the condition precedent unfulfilled. *See* Hack Cert. Exh. I.

In support of summary judgment, Plaintiff states that, if necessary, he is "ready, willing, and able to replace that financing with another source to enable the sale of membership interests to occur." Alternatively, Plaintiff argues that Defendants waived their right to FSB's consent by accepting Plaintiff's initial purchase offer unconditionally. Defendants argue that they had no contractual obligations under the membership interest contract because the condition precedent was unfulfilled and Plaintiff has not secured, or adequately demonstrated that he can secure, alternative financing.

The evidence, when viewed in a light most favorable to Defendants, "raises a genuine issue concerning [Plaintiff's] good faith performance of the conditions precedent sufficient to withstand a motion for summary judgment." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1351 (6th Cir. 1991); *In re Sunset Bay Associates*, 944 F.2d 1503, 1516 (9th Cir. 1991) (whether there is substantial compliance with a condition precedent to a contract is a question of fact); *see generally, Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405–06 (3d Cir. 2007) ("A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim."). Summary judgment is therefore, not warranted.

---

[4] The Court rejects Plaintiff's argument that FSB's consent is not a condition precedent because the Modification Agreement was signed after the AROA: first, the AROA contains a provision allowing for the AROA to be amended, *see* AROA Section 1.6, and second, the membership interest contract is clearly governed by both the AROA and the Modification Agreement, as indicated in Stang's own certification.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment is **DENIED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 7, 2016**